IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JANET L. ALBRIGHT,

        Plaintiff,

vs.                                                                No. CIV 02-1082 WDS

JO ANNE B. BARNHART, Commissioner
of the Social Security Administration,

        Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing filed on May 5, 2003. Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security, who determined that Plaintiff was not eligible for supplemental security income. The Court, having considered Plaintiff's Motion [docket # 16] and Memorandum Brief [docket # 17], Defendant's Response [docket # 18], the administrative record and applicable law, finds that Plaintiff's Motion should be **GRANTED IN PART,** and that this matter should be remanded to the Commissioner for further proceedings in accordance with this Memorandum Opinion and Order.

### Procedural Background

Plaintiff, who was born on May 4, 1960, filed her initial application for supplemental security income ("SSI") under Title XVI of the Social Security Act on February 7, 2001. **Tr. 114-116.** Plaintiff alleged that she became unable to work as a result of her disabling conditions on December 31, 1983, **Tr. 114,** but subsequently amended her alleged onset date to January 11, 2001, **Tr. 49.** After Plaintiff's application for benefits was denied at the initial level, **Tr. 91-94,** and at the reconsideration level, **Tr. 97-99,** Plaintiff appealed by filing a request for hearing by an administrative

law judge ("ALJ"), **Tr. 100-101.**

The hearing before the ALJ was held on January 29, 2002, at which Plaintiff appeared and was represented by an attorney. **Tr. 46-84.** Plaintiff alleged that she was disabled as a result of diabetes, asthma, a cyst on the back of her head, high blood pressure and mental impairments. **Tr. 55-58.** In a decision dated March 26, 2002, the ALJ denied Plaintiff's claims for SSI. **Tr. 34-43.** Plaintiff then filed a request for review with the Appeals Council on May 22, 2002. **Tr. 9-12.** The Appeals Council denied Plaintiff's request for review on August 13, 2002, **Tr. 6-7,** and thereby rendered the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). *See* 20 C.F.R. § 416.1481 (2003).

On August 28, 2002, Plaintiff filed this action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 1383(c)(3). After consent by the parties, this case was reassigned to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) on January 23, 2004 [docket # 21].

## Standard of Review

This Court may only review the Commissioner's decision to determine whether it is supported by substantial evidence and whether correct legal standards were applied. *Andrade v. Secretary of Health & Human Servs.,* 985 F.2d 1045, 1047 (10th Cir. 1993). In determining whether the Commissioner's findings are supported by substantial evidence, the Court should not re-weigh the evidence, nor should it substitute its judgment for that of the Commissioner. *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994). Instead, the Court should meticulously examine the record to determine whether the Commissioner's decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams v. Bowen,* 844 F.2d

2

748, 750 (10th Cir. 1993). The "substantial evidence" standard is satisfied by more than a scintilla, but less than a preponderance, of evidence. *Id.* However, evidence is not substantial if it is overwhelmed by other evidence or if it constitutes a mere conclusion. *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir. 1989).

The issue in this case is whether Plaintiff is "disabled" and therefore qualified for benefits under Title XVI of the Social Security Act. A sequential five-step analysis applies in determining whether an adult claimant is disabled. *See Williams,* 844 F.2d at 750-52; 20 C.F.R. § 416.920. First, the question is whether the claimant is engaged in substantial gainful activity. *Williams,* 844 F.2d at 750. If so, the claimant is not disabled; if not, the analysis proceeds to step two. *Id.* At the second step, the question is whether the claimant has an impairment or combination of impairments that is severe. *Id.* If not, the claimant is not disabled; however, if the claimant makes the required showing of severity, the analysis proceeds to step three. *Id.* at 750-51. At step three, the question is whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed at Appendix 1, Subpart P, of 20 C.F.R. Part 404 ("Listings" or "Listed Impairment"). *Id.* at 751. If so, the impairment is considered to be presumptively disabling. *Id.* If not, the analysis proceeds to step four, where the question is whether the impairment prevents the claimant from doing past work. *Id.* The claimant is not disabled if he or she can perform past work. *Id.* If the claimant cannot perform past work, the analysis proceeds to step five, where the burden shifts to the Commissioner to establish that the claimant has the residual functional capacity ("RFC") "to perform other work in the national economy in view of his age, education and work experience." *Id.* (quoting *Bowen v. Yuckert,* 482 U.S. 137, 142 (1987)). The claimant is entitled to benefits unless the Commissioner establishes that the claimant can "perform an alternative work activity and that this

specific type of job exists in the national economy." *Id.* (quoting *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984)).

## Summary of the ALJ's Decision

At step one of the sequential analysis, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after her alleged onset date of January 11, 2001. **Tr. 36.** The ALJ found at step two that Plaintiff had severe diabetes mellitus with peripheral neuropathy, asthma, and major depression with anxiety during the relevant time period, **Tr. 36,** but found at step three that these impairments were not severe enough to meet or medically equal the Listings, **Tr. 37.** At step four, the ALJ concluded that Plaintiff retained the residual functional capacity for a limited range of light work, and had no past relevant work. **Tr. 41.** At step five, the ALJ determined that Plaintiff could perform the jobs of office helper, shipping receiver/weigher, and laundry folder, and that these jobs exist in significant numbers in the regional and national economy. **Tr. 41.**

## Discussion

### A. Did the ALJ Err by Failing to Accord Proper Weight to Opinions by Medical Professionals who Treated Plaintiff?

Plaintiff's first contention is that the ALJ failed to accord proper weight to letters written by a physician and a counselor who had treated Plaintiff. The first letter was written by Laura Saavedra, M.D., who is a physician at the University of New Mexico Family Health Clinic. **Tr. 573.** The second letter was written by Ms. Corky St. James, who was Plaintiff's mental health counselor from 1994 to 1999. **Tr. 552-54.**

Dr. Saavedra was Plaintiff's primary care physician during the relevant time period. **Tr. 573.** Apparently upon request by Plaintiff's attorney, Dr. Saavedra wrote a letter dated February 4, 2002.

4

In the first paragraph of her letter, Dr. Saavedra noted that Plaintiff suffers from several significant medical conditions and listed, as examples, a number of physical impairments as well as depression. Dr. Saavedra then opined that "the variety and frequency of [Plaintiff's] symptoms would make it very difficult for her to work full time." In the second paragraph of her letter, Dr. Saavedra wrote:

> Ms. Albright has also had difficulty participating fully in her own health care. Probably for a variety of reasons, she often misses or does not schedule recommended appointments and declines recommended tests or treatments. I think that the problems which contribute to this behavior would also negatively affect her performance in a work situation.

**Tr. 573.** The ALJ determined that Dr. Saavedra's February 4, 2002 letter was entitled to "little weight." **Tr. 39.** For the following reasons, I find that the ALJ did not err in this determination.

An ALJ must give controlling weight to a treating physician's opinion if it is well-supported and it "is not inconsistent with other substantial evidence in the record." *E.g., McGoffin v. Barnhart,* 288 F.3d 1248, 1252 (10th Cir. 2002). While an ALJ may reject a treating physician's opinion if it is "brief, conclusory, and unsupported by medical evidence," the ALJ must set forth specific, legitimate reasons for doing so. *Frey v. Bowen,* 816 F.2d 508, 513 (10th Cir. 1987). On one hand, it is clear that some of the ALJ's reasons for according Dr. Saavedra's opinions little weight are not legitimate. For example, the ALJ discounted Dr. Saavedra's opinions because he thought the tone of the letter sounded like Dr. Saavedra was an advocate for Plaintiff, and that she "made excuses" for Plaintiff's failure to comply with medical treatment. Yet, it is well-settled that an ALJ should not reject the opinion of a treating physician on the ground that a doctor is likely to be an advocate for his or her patient. *Frey,* 816 F.2d at 515; *McGoffin,* 288 F.3d at 1253; *Miller v. Chater,* 99 F.3d 972, 976 (10th Cir. 1996). On the other hand, the opinions Dr. Saavedra expressed in her letter are not "well-supported" in the first instance. In order to be accorded controlling weight, a treating

5

physician's opinions must be well-supported "by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.927(d)(2). Because Dr. Saavedra did not support her opinions with medically acceptable clinical and laboratory diagnostic techniques, I find that they are not entitled to controlling weight.[1] *See Watkins v. Barnhart,* 350 F.3d 1297 (10th Cir. 2003).

Nevertheless, even if Dr. Saavedra's letter was not entitled to controlling weight, the ALJ could not properly disregard her opinions without first considering the following:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Goatcher v. United States Dep't of Health & Human Servs.,* 52 F.3d 288, 290 (10th Cir. 1995); *see also* 20 C.F.R. § 416.927(d)(1)-(6). Although the ALJ did not specifically list these factors in his decision, I find that he sufficiently addressed them in his analysis.

The first and second factors require consideration of the length of the treatment relationship, nature and extent of the treatment relationship, and the frequency of examination. In his decision, the ALJ discussed every occasion when Plaintiff saw Dr. Saavedra that is evidenced in the record,[2] and stated the reasons Plaintiff saw Dr. Saavedra as well as Dr. Saavedra's findings. **Tr. 36-39.** The

---

[1]Plaintiff contends that an ALJ may only reject a treating physician's opinion on the basis of contrary medical evidence. Pl.'s Mem. Br. at 7 (citing *McGoffin,* 288 F.3d at 1252). However, I think *McGoffin* holds that an ALJ may only reject a treating physician's *well-supported* opinion when contrary medical evidence exists. Since I find that Dr. Saavedra's opinion is not well-supported, I do not think the standard set out in *McGoffin* applies.

[2]The record indicates that Plaintiff saw Dr. Saavedra on January 25, 2001, **Tr. 200-202, 568-571,** on October 11, 2001, **Tr. 559-567,** and again on November 9, 2001, **Tr. 557-558.**

ALJ also characterized the nature of the treatment relationship as being for physical impairments rather than for psychological disorders. **Tr. 39.** Plaintiff contends that, contrary to this finding, Dr. Saavedra treated Plaintiff for depression. I disagree, for the record indicates that the only actions Dr. Saavedra took with respect to Plaintiff's depression was to discuss with Plaintiff the need for treatment, **Tr. 571,** and refer Plaintiff to a mental health center, **Tr. 566, 571.** Indeed, Dr. Saavedra apparently did not prescribe anti-depressant medication for Plaintiff because she "was not willing to take any new medications . . . ." **Tr. 567.** With regard to the frequency of Plaintiff's visits, the ALJ noted that after her first visit in January 2001, Plaintiff was directed to return in one month but did not return until October 2001. **Tr. 38.** Additionally, the ALJ noted that Dr. Saavedra wrote that she saw Plaintiff "infrequently." **Tr. 38** (citing **Tr. 573**).

The third and fourth factors required the ALJ to consider the degree to which the physician's opinion is supported by relevant evidence, and the consistency between the doctor's opinion and the record as a whole. The ALJ apparently recognized that at least one of Dr. Saavedra's opinions was supported by a letter written by Corky St. James. **Tr. 40.** In this regard, Dr. Saavedra stated that Plaintiff had difficulty participating fully in her own health care, and, for a variety of reasons, often missed or failed to schedule recommended appointments and declined recommended tests or treatments. The ALJ noted that Ms. St. James had also opined that Plaintiff "had postponed and canceled medical appointments because of mental health 'avoidance issues.'" **Tr. 40.** On the other hand, the ALJ addressed the opinions of two other physicians, Dr. Rene Gonzales and Dr. E. Chiang, which he apparently believed were inconsistent with Dr. Saavedra's opinions. Dr. Saavedra had opined that Plaintiff's significant medical conditions would make it difficult for her to work full-time, and also stated that the problems that make it difficult for Plaintiff to follow medical treatment would

7

have a negative effect on her performance in a work situation. By way of contrast, both Dr. Gonzales and Dr. Chiang found that most of Plaintiff's functional limitations were mild. **Tr. 39-40.**

The ALJ addressed the fifth factor, which is whether the physician is a specialist in the area upon which an opinion is rendered. In this regard, the ALJ discounted Dr. Saavedra's February 2002 letter in part after noting that Dr. Saavedra is a general practitioner rather than a psychologist or a psychiatrist, and was treating Plaintiff for her physical impairments and not her psychological disorders. **Tr. 39.** There is no dispute that Dr. Saavedra is not a psychiatrist or psychologist, and, as I have previously noted, I agree that Dr. Saavedra did not treat Plaintiff for her mental disorders.

The ALJ also addressed the sixth factor when he discussed other matters that tended to support or contradict Dr. Saavedra's opinion. In this regard, the ALJ cited several other reasons for discounting Dr. Saavedra's opinions. First, the ALJ found that Dr. Saavedra did not identify any specific exertional limitations Plaintiff may have suffered. **Tr. 39.** Second, the ALJ believed that Dr. Saavedra's remarks were speculative in nature. **Tr. 39.** Although Plaintiff asserts that an opinion is always speculative in nature, I find the ALJ's point to be well-taken in this case. Although Dr. Saavedra was not treating Plaintiff for a mental disorder, she offered opinions about the effect of Plaintiff's mental condition on her ability to work. Absent evidence that Dr. Saavedra's conclusion was based upon psychological evaluation or testing, I agree that her conclusions are speculative. Third, the ALJ apparently concluded that Dr. Saavedra's opinions were not well-founded because her letter was written three months after Plaintiff's last appointment. **Tr. 39.** Plaintiff asserts that "[a] patient frequently might wait 3 months between visits with a primary care physician," and contends that, since this finding is not "self-explanatory," it should be disregarded. Contrary to Plaintiff's argument, the ALJ explained that given the three-month time lapse, Dr. Saavedra did not

8

know at the time when she wrote the letter whether Plaintiff had seen another doctor or counselor, whether she was taking her medication, or whether she had undergone any psychological or psychiatric testing. **Tr. 39.** In other words, the ALJ questioned the validity of Dr. Saavedra's conclusions because they were not based on current information. I agree that this was a proper basis for questioning the validity of Dr. Saavedra's conclusions.

Plaintiff also contends that even if the ALJ properly found that Dr. Saavedra's opinions were unclear, he was required to obtain additional information from Dr. Saavedra before rejecting the report. Pl.'s Mem. Br. at 7 (citing *McGoffin,* 288 F.3d at 1252). In the *McGoffin* case, the plaintiff submitted an assessment of her work-related abilities completed by her case manager and signed by her treating psychiatrist. The ALJ accorded that assessment no weight for reasons that included the ALJ's speculation that the treating psychiatrist may not have agreed with the assessment. The Court of Appeals found that the ALJ erred in according the assessment no weight, and stated that at the very least, the ALJ should have sought additional information from the plaintiff's doctor before rejecting the report outright. *McGoffin,* 288 F.3d at 1252. In this case, however, the ALJ did not reject Dr. Saavedra's report outright, but instead accorded it "little weight." I do not think *McGoffin* requires that an ALJ seek additional information before assigning some weight to a treating physician's report, provided that he or she performs the required analysis and gives good reasons for assigning diminished weight to the report. *See generally Watkins v. Barnhart,* 350 F.3d 1297 (10th Cir. 2003) (setting forth analysis for treating source opinions and holding that an ALJ must "give good reasons . . . for the weight he ultimately assigns the opinion.").

In reviewing the ALJ's decision, I cannot re-weigh the evidence or substitute my judgment for that of the ALJ, and I must affirm if the ALJ's determination is supported by "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion. *See Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994). I find that the ALJ's discussion demonstrates that he gave sufficient consideration to the six required factors. Additionally, I find that the evidence in the record is adequate to support the ALJ's conclusions, and that, with the exception of his assertion that Dr. Saavedra sounded like an advocate who made excuses for Plaintiff, the ALJ gave sufficient reasons for the weight he ultimately assigned to Dr. Saavedra's letter. Accordingly, I find that the ALJ did not err when he determined that Dr. Saavedra's letter was entitled to little weight.

Plaintiff also contends that the ALJ accorded improper weight to a letter written by Corky St. James. Ms. St. James is a licensed alcohol and drug abuse counselor who treated Plaintiff in individual therapy from approximately 1994 to 1999. **Tr. 552.** On January 27, 2002, Ms. St. James wrote a letter in which she opined that Plaintiff "is not capable of working, going to school, or even interacting at any length without severe and debilitating symptoms, self-sabotaging behavior, and suicidal ideation." **Tr. 554.** Ms. St. James also assigned Plaintiff a GAF score of 21.[3] **Tr. 554.** The ALJ wrote that he gave Ms. St. James' opinions regarding Plaintiff's psychological functioning little weight because she is not a medical doctor, psychologist or psychiatrist. **Tr. 40.** Plaintiff contends that even if Ms. St. James was not a doctor or psychologist, the ALJ was required to consider evidence from her to understand how her impairment affects her ability to work.

Applicable regulations enumerate certain persons, such as licensed physicians and licensed

---

[3] A global assessment of functioning ("GAF") score measures an individual's overall level of psychological, social and occupational functioning. American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders 32 (4th ed. 2000). The description for persons whose GAF score falls between 21 and 30 is as follows: "Behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g. sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day, no job, home, or friends)." *Id.* at 34.

psychologists, who are acceptable medical sources who may provide evidence to establish the existence of a medically determinable impairment.  *See* 20 C.F.R. § 416.913(a).  With respect to professionals who are not included in the list of acceptable medical sources, the regulations state that the Administration *may* use other sources to determine the severity of an impairment and how it affects a claimant's ability to work.  20 C.F.R. § 416.913(d).  The use of the word "may" indicates that the ALJ could, but was not required to, consider Ms. St. James' opinions.  Accordingly, I find that the ALJ did not err in according Ms. St. James' opinions little weight based upon the fact that she is not an acceptable medical source.

### B.  Did the ALJ Err by Failing to Find that Plaintiff's Impairments Met or Equaled a Listed Impairment

The ALJ concluded that, although Plaintiff's diabetes mellitus with peripheral neuropathy, asthma, and major depression with anxiety were "severe," those impairments were not severe enough to meet or medically equal a Listed Impairment.  **Tr. 37.**  The ALJ then wrote that, because Plaintiff's attorney did not contend at the hearing that Plaintiff's impairments met or medically equaled a Listed Impairment, "claimant did not meet her burden of proof at this step of the evaluation process."  **Tr. 37.**  Plaintiff contends that the ALJ erred when he concluded, without discussion, that her impairments did not meet any of the Listings.  Defendant responds that, although the ALJ did not cite specific Listing section numbers, his discussion includes a thorough analysis of the evidence that supports his determination that Plaintiff's impairments did not meet or equal the Listings.

Contrary to Defendant's argument, I find that the ALJ's decision does not include an analysis of whether Plaintiff's impairments met or equaled any Listed Impairment.  Not only did the ALJ fail to cite specific Listing section numbers, but he never discussed what was required to satisfy any

11

Listed Impairment and never compared Plaintiff's impairments to any of the Listings. However, regardless of the ALJ's failure to address the issue, the ALJ found that Plaintiff was not disabled as a result of her physical impairments on a separate basis. In this regard, the ALJ concluded that Plaintiff was not disabled as a result of her physical impairments because he found that Plaintiff, without good cause, failed to follow medical treatment that could reasonably be expected to restore her ability to work. **Tr. 37-38;** *see* 20 C.F.R. § 416.930(b) (finding of disability barred where claimant fails to follow prescribed medical treatment without good cause); *Teter v. Heckler,* 775 F.2d 1104, 1107 (10th Cir. 1985) (failure to undertake treatment bars recovery only if treatment was expected to restore ability to work). If this finding is supported by substantial evidence in the record, Plaintiff could not be found disabled regardless of whether her impairments otherwise met or equaled any of the Listings. Thus, if the ALJ's finding that Plaintiff failed, without good cause, to follow medical treatment that could reasonably be expected to restore her ability to work is supported by substantial evidence, his failure to discuss the Listings would not constitute reversible error.

Before a claimant can be barred from recovering disability benefits based upon noncompliance with treatment, each of the following findings must be supported by substantial evidence:

> (1) the treatment at issue should be expected to restore the claimant's ability to work; (2) the treatment must have been prescribed; (3) the treatment must have been refused; (4) the refusal must have been without justifiable excuse.

*Teter,* 775 F.2d at 1107. There appears to be no dispute that Plaintiff failed to comply with prescribed medical treatment. For example, on January 25, 2001, Plaintiff admitted to Dr. Laura Saavedra that she had been noncompliant with her prescribed health care. **Tr. 569.** Among other things, Plaintiff told Dr. Saavedra that she was running out of medication so she had been spacing her pills out to try to make them last, that she did not check her blood sugar, and that she did not care much about self-

12

monitoring. **Tr. 569.** Dr. Saavedra noted on October 11, 2001 that Plaintiff had failed to follow up with visits to medical providers, that she had not been monitoring her blood sugar, and that her diabetes was poorly controlled. **Tr. 566-567.** Dr. Saavedra noted again on November 9, 2001 that Plaintiff's diabetes mellitus was poorly controlled due to medication noncompliance. **Tr. 557.**

The ALJ also concluded that the medical treatment prescribed by Dr. Saavedra was expected to restore Plaintiff's ability to work because Plaintiff admitted that she felt better when she complied with her medical treatments. **Tr. 38.** The record also appears to support this conclusion. In addition to Plaintiff's report that she felt better when she took her medication, Dr. Saavedra counseled Plaintiff about "potential diabetic complications and the fact that better control can limit these." **Tr. 570.** Dr. Saavedra also advised Plaintiff that early evaluation and intervention as to Plaintiff's cardiac risk factors "might prevent significant morbidity/mortality," **Tr. 571,** and told Plaintiff that, with her cooperation, her chronic medical problems could prevent future complications such as heart attack or stroke, **Tr.567.** In view of this evidence, I find that the ALJ reasonably concluded that prescribed medical treatment could be expected to restore Plaintiff's ability to work.

Nevertheless, Plaintiff's failure to comply with treatment could only be barred if she did not have good cause or justifiable excuse for her noncompliance. *See Teter,* 775 F.2d at 1107; 20 C.F.R. § 416.930(b). Evidence in the record indicates that Plaintiff's noncompliance with medical treatment may be the result of Plaintiff's mental disorders. On January 25, 2001, Dr. Saavedra advised Plaintiff that treating her depression might help her motivation to attend to her health issues. **Tr. 571.** On October 11, 2001, Dr. Saavedra again noted her suspicion that Plaintiff's depression was contributing to her noncompliance. **Tr. 567.** Corky St. James noted that Plaintiff's "emotional state is chronically suicidal, which is reflected in her refusal to alter her diet or take her medications regularly enough to

13

control her symptoms." **Tr. 553.** Ms. St. James further opined that Plaintiff missed medical and counseling appointments because of mental health and avoidance issues. **Tr. 554.** Plaintiff's depression is confirmed by two other doctors who examined Plaintiff at the request of the Administration. Dr. Rene Gonzales included "major depression recurrent episode" in his diagnoses and diagnostic impressions. **Tr. 207.** Dr. E. Chiang agreed that Plaintiff suffered from disturbance of mood, accompanied by a full or partial depressive syndrome. **Tr. 216.**

Although the ALJ wrote that he did "not find good cause for the claimant's failure to take her medication as prescribed," **Tr. 38,** he did not explain why he reached this conclusion. Although I have found no controlling Tenth Circuit precedent, other courts have found that non-compliance that results from a mental impairment may provide a justifiable excuse for failure to comply with treatment. *See Brashears v. Apfel,* 73 F.Supp.2d 648, 651 (W.D. La. 1999); *Mendez v. Chater,* 943 F.Supp. 503, 508 (E.D. Pa. 1996). Given the evidence indicating that Plaintiff's failure to follow prescribed medical treatment may have resulted from a mental disorder, I find that the ALJ's failure to discuss the issue constitutes legal error. Because the ALJ relied upon Plaintiff's noncompliance with treatment to find that she is not disabled, the case must be remanded for further discussion of the issue of whether Plaintiff had a justifiable excuse for her failure to comply with treatment.

Since the ALJ committed legal error in his determination that Plaintiff failed, without good cause, to follow  finding prescribed medical treatment that could reasonably be expected to restore her ability to work, I must now address the issue of whether the ALJ erred when he concluded, without discussion, that Plaintiff's impairments did not meet or medically equal any Listed Impairment. I have previously rejected Defendant's contention that the ALJ's decision contains an analysis of whether Plaintiff's impairments met or equaled any Listed Impairment despite his failure

to cite specific Listing section numbers.  I also reject the ALJ's assertion that Plaintiff failed to meet her burden of proving that her impairments were at Listing-level severity because her attorney did not make this argument at the hearing.  Both the ALJ and Plaintiff's attorney questioned Plaintiff at the hearing about the nature and extent of her impairments, and how her impairments affected her ability to function.  Although Plaintiff's counsel did not specifically identify Listing sections that matched Plaintiff's impairments, I am aware of no requirement that he have done so.  The ALJ, on the other hand, has a statutory duty to "discuss the evidence and explain why he found [claimant] was not disabled at step three."  *Clifton v. Chater,* 79 F.3d 1007, 1009 (10th Cir. 1996) (citing 42 U.S.C. § 405(b)(1)).  I find that this duty applies regardless of whether Plaintiff was represented by counsel, and regardless of whether Plaintiff's attorney specifically identified relevant Listing sections.  *See generally Baca v. Department of Health & Human Servs.,* 5 F.3d 476, 479-80 (10th Cir. 1993) (although claimant has burden of providing evidence of disability, the ALJ has a duty to fully and fairly develop the record as to all material issues even when claimant is represented by counsel).  I therefore find that the ALJ's failure to discuss whether Plaintiff's impairments met or equaled the Listings constitutes legal error that requires remand.

### C.  Did the ALJ Err in his Credibility Determination?

Plaintiff's final contention is that the ALJ erred when he concluded that Plaintiff was not credible.  More specifically, the ALJ wrote that "it is common knowledge that UNM provides free or reduced cost medical treatment.  Thus, the claimant could have sought help with paying for her medication. The fact that she did not do so refutes her allegations of chronic, disabling impairments and reflects adversely on her overall credibility."  **Tr. 38.**  Plaintiff contends that "[t]he ALJ's assumption that [Plaintiff] could walk into the clinic at UNM and receive free health care is simply

15

wrong, and his finding that she is not credible on that basis therefore is wrong as well . . . ." As support for this argument, Plaintiff has submitted evidence to the Court indicating that UNM provides non-emergency treatment for indigent persons on a sliding fee scale.

Given the ALJ's assertion that UNM provides "free *or reduced cost medical treatment,*" I find that Plaintiff has mischaracterized the ALJ's finding. The ALJ did not rely upon the assumption that Plaintiff could obtain free health care. Moreover, and in any event, other evidence arguably supports the ALJ's determination. On January 25, 2001, Dr. Saavedra wrote that she had put Plaintiff in touch with an individual named Mary Ellen Gonzales "to help us assess her situation and other potential financial resources." Tr. 571. Plaintiff's records after that date indicate that she was still non-compliant with treatment, and do not indicate that she had contacted Ms. Gonzales or taken other steps to obtain medical care. Accordingly, I find that the Plaintiff has failed to set forth a meritorious basis for reversing the ALJ's credibility assessment.

## **Conclusion and Summary**

In sum, I find that the ALJ erred when he concluded, without discussion, that Plaintiff's impairments did not meet or medically equal a Listed Impairment. I also find that the ALJ could not reach this conclusion solely because Plaintiff's attorney did not argue at the hearing that Plaintiff's impairments met or equaled one of the Listings. I further find that the ALJ erred when he concluded that Plaintiff did not have good cause for her failure to comply with treatment without discussing the question of whether Plaintiff's mental impairments constituted a justifiable excuse for her failure.

Accordingly, this matter shall be remanded to the Commissioner of Social Security to conduct further proceedings, which shall include:

1) At step three of the sequential five-step analysis, the Commissioner should determine

whether Plaintiff has an impairment or combination of impairments that meets or medically equals an impairment listed at Appendix 1, Subpart P, of 20 C.F.R. Part 404. The Commissioner's determination should include an explanation of reasons for the determination. Further, a determination that is adverse to Plaintiff may not be based solely upon her attorney's alleged failure to argue that Plaintiff's impairments met a Listing.

2) If the Commissioner relies upon Plaintiff's non-compliance with prescribed medical treatment as a basis for a finding of non-disability, the Commissioner must first determine whether Plaintiff had good cause, or justifiable reason, for her failure to comply. This determination should address evidence indicating that Plaintiff's mental impairments may have been a cause of her non-compliance.

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing is **GRANTED IN PART,** and this matter shall be remanded to the Commissioner of Social Security for further proceedings in accordance with this Memorandum Opinion and Order.

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　**W. DANIEL SCHNEIDER**
　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**